1  JACOREY DESHAWN TAYLOR
2  REG. NO. 05263-748
   USP VICTORVILLE
3  U.S. PENITENTIARY
   P.O. BOX 3900
4  ADELANTO, CA  92301
5  Appearing *Pro Se*

```
_____ FILED        _____ RECEIVED
_____ ENTERED      _____ SERVED ON
        COUNSEL/PARTIES OF RECORD

        MAR - 1 2019

     CLERK US DISTRICT COURT
       DISTRICT OF NEVADA
BY:_____DEPUTY
```

6

7                **UNITED STATES DISTRICT COURT**

8                  **DISTRICT OF NEVADA**
9                           **\*\*\***

10

11  JACOREY DESHAWN TAYLOR,

12              Movant,                    Civil No. 2:19-cv-_____
                                           Crim No. 2:08-cr-00283-RCJ-PAL-5
13

14  vs.                                    **SECOND-IN-TIME    MOTION
                                           PURSUANT  TO  28 U.S.C. § 2255**
15  UNITED STATES OF AMERICA,

16

17              Respondent.

18  ────────────────────────────

19          COMES Movant, JACOREY DESHAWN TAYLOR ("Taylor"), appearing *pro*

20  *se*, and in support of this motion would show as follows:

21                   **I. PRELIMINARY STATEMENT**

22

23          Taylor respectfully requests that this Court be mindful that *pro se* complaints

24  are to be held "to less stringent standards than formal pleadings drafted by lawyers,"

25  and should therefore be liberally construed. *Pouncil v. Tilton*, 704 F.3d 568 (9th Cir.

26  2012); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S.

27  519 (1972)(same).

28  //

                              1

## II. JURISDICTION

Jurisdiction is vested in this Court to hear and adjudicate the merits under 28 U.S.C. § 2255 or any other applicable rules governing it.

## III. STATEMENT OF THE CASE

### A.   Procedural Background

On January 24, 2012, a grand jury sitting in the United States District Court for the District of Nevada, Las Vegas Division, returned a nineteen (19) count Superseding Indictment charging Taylor and 3 other co-defendants. See Doc. 650.[1] Count 1s charged Taylor with Conspiracy to Engage in a Racketeer Influenced Corrupt Organization, in violation of 18 U.S.C. § 1962(d). *Id.* Count 5s charged Taylor with Violent Crime in Aid of Racketeering Activity, in violation of 18 U.S.C. § 1959. *Id.* Count 6s charged Taylor with Use of Firearm During a Crime of Violence, in violation of 18 U.S.C. §§ 924(c) and (j). *Id.* Count 9s charged Taylor with Conspiracy to Engage in Drug Trafficking, in violation of 21 U.S.C. § 846. *Id.* Counts 17s and 19s charged Taylor with Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1)(iii). *Id.*

On March 19, 2013, the government filed an Information and Notice, with an intent to seek enhanced penalties pursuant to 21 U.S.C. § 851 ("851 Enhancement"). See Doc. 831.

On April 8, 2013, an 20-day jury trial commenced. See Doc. 852.

On May 6, 2013, the jury returned a verdict of guilty on Counts 1s, 5s, 6s, 9s, and 17s-18s of the Superseding Indictment as to Taylor. See Doc. 897.

On October 22, 2013, Taylor was sentenced to a term of Life imprisonment, 10 years Supervised Release, $685 restitution, and a Mandatory Special Assessment Fee of $600. See Docs. 966, 969.

On October 24, 2013, Taylor timely filed a Notice of Appeal. See Doc. 967.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the District of Nevada, Las Vegas Division in Criminal No.2:08-cr-00283-RCJ-PAL-5, which is immediately followed by the Docket Entry Number.

On September 5, 2015, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") affirmed the judgment of the District Court. See Doc. 1070.

On September 19, 2016, Taylor filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). See Doc. 1125.

On October 18, 2016, the Court issued an Order denying Taylor's § 2255 Motion. See Doc. 1130.

### B.   Statement of the Relevant Facts

#### 1.   Offense Conduct

Beginning in at least 1999, up through and including the date of the Indictment, the defendants and others, being persons employed by and associated with the Playboy Bloods, an enterprise, which engaged in, and the activities of which affected, interstate commerce, did knowingly and intentionally conspire to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined by 18 U.S.C. §§ 1961(1) and (5). The pattern of racketeering activity through which the defendants agreed to conduct the affairs of the enterprise consisted of multiple acts including murder, in violation of Nevada Revised Statutes, Sections 195.020 (aiding and abetting), 199.480 (conspiracy), 200.030 (murder) and 193.330 (attempted murder); extortion, in violation of Nevada Revised Statutes, Section 205.320; acts indictable under 18 U.S.C. § 1951 (interference with commerce by robbery and extortion); and offenses involving the felonious manufacturing, importation, receiving, concealment, buying, selling and otherwise dealing in a controlled substance, in violation of 18 U.S.C. §§ 841, 846 and 856.

#### 2.   Trial Proceeding

On April 8, 2013, a jury trial commenced before Chief Judge Robert C. Jones. See Doc. 852. After a three-week trial, a jury found Taylor guilty of racketeering, including murder in aid of racketeering activity and various other drug- and firearms-related felonies [Counts 1s, 5s, 6s, 9s, and 17s-18s of the Superseding

Indictment]. See Doc. 897. The case was referred to the Probation Office for the preparation of the PSR.

### 3.   Presentence Report Calculations and Recommendations

The Probation Office prepared Taylor's PSR. The PSR calculated Taylor's Total Offense Level to be level 47, in Criminal History Category V, yielding an advisory guideline range of Life.

On October 18, 2013, Taylor filed a Sentencing Memorandum objecting to the following: (1) role and conduct of other defendants; (2) inclusion of Paragraph 62 of the PSR– unnamed cooperating witness; (3) Paragraph 87 of the PSR– murder of Billy Thomas; and (4) 2-level enhancement for obstruction of justice. See Doc. 961.

### 4.   Sentencing Proceeding

On October 22, 2014, a Sentencing Hearing was held before Chief Judge Robert C. Jones. See Doc. 966. The Court overruled Taylor's objections to the PSR and sentenced him to concurrent 240-month terms of imprisonment on three counts [Counts 1s, 17s and 18s], concurrent life sentences on two other counts [Counts 5s and 9s], and a consecutive life sentence on another count [Count 6s]; supervised release for a term of 3 years on Counts 1s, 17s and 18s, 5 years on Counts 5s and 6s, and 10 years on Count 9s, all to run concurrently; $685 restitution to be paid jointly and severally with all co-defendants; and a Mandatory Special Assessment Fee of $600. See Doc. 969. All counts of the original Indictment were dismissed on the motion of the United States. *Id.* A timely Notice of Appeal was filed on October 24, 2013. See Doc. 967.

### 5.   Appellate Proceeding

On Appeal, Taylor alleges that the district court: (1)  erred in denying his Motion for Judgment of Acquittal; (2) abused its discretion in admitting evidence re: Agent Shields' testimony; (3) abused its discretion in its formulation of jury instructions; and (4) dismissal of a juror during deliberations for abuse of discretion. However, the Ninth Circuit affirmed the judgment of the District Court. See *USA V.*

*Jacorey Taylor*, No. 13-10572 (9th Cir. 2015). The Supreme Court denied Taylor's petition for a writ of certiorari on October 13, 2015. The Court of Appeals dismissed a second appeal as duplicative.

6.      Postconviction Proceeding

On September 19, 2016, Taylor filed a § 2255 Motion, listing six counts. Taylor argues in his second, third, and fifth counts that various statutes under which he was convicted are void for vagueness or that the rule of lenity should apply in his case. In count four, Taylor argues that there was insufficient evidence to convict him under 18 U.S.C. § 1959. In count six, Taylor argues that the application of AEDPA to him was unconstitutional.

Taylor first argues that trial counsel was ineffective for failing to: (1) object to all PSR enhancements and false allegations not supported by testimony and facts; (2) object to fact that Counts 17s and 18s do not indict Taylor, yet sentenced him; (3) object at sentencing that the judge did not want to sentence Taylor to life, yet mandatory; and (4) appellate counsel failed to appeal an allegedly illegal sentence under 18 U.S.C. § 3742. However, on October 18, 2016, the Court denied Taylor's § 2255 Motion. See Doc. 1130.

## IV. GROUND FOR REVIEW

Whether, due to the extraordinary and unique circumstances arising after the Judgment was entered in this case, Taylor's sentence is now in violation of the Constitution and the Laws of the United States and his sentence must be vacated for resentencing.

## V. ARGUMENT

A.      Standard of Review

Ninth Circuit precedent requires review of a district court's interpretation of the sentencing guidelines be *de novo* and its factual determinations for clear error. See

*Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).

B.    Discussion

Section 2255 is designed to correct fundamental constitutional or jurisdictional errors, which would otherwise "inherently result in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979), or "an omission inconsistent with the rudimentary demands of fair procedure," *Hill v. United States*, 368 U.S. 428 (1962). When competent proof establishes a dispute as to a material factual issue brought under a § 2255 motion, the Court must hold an evidentiary hearing. See *United States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000).

**Due to the Extraordinary and Unique Circumstances Arising after the Judgment Was Entered in this Case, Taylor's Sentence Is Now in Violation of the Constitution and the Laws of the United States and His Sentence must Be Vacated for Resentencing.**

A.    In Light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *United States v. Begay*, No. 14-10080 (9th Cir. Mar. 29, 2017), § 924(c)(3)(B) Cannot Support a § 924(c) Conviction Predicated on RICO Conspiracy Because That Definition "is Unconstitutionally Vague"

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-51 (2006); *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003). There is, however, "an exception if a defendant can demonstrate both 'cause' for not raising the claim at trial, and 'prejudice' from not having done so." *Sanchez-Llamas*, 548 U.S. at 351.

"[T]he cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim" on appeal. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (internal quotation marks omitted). Cause can be demonstrated by "a showing that the factual or legal basis for a claim

was not reasonably available to counsel." *Id.*; *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim." *Reed v. Ross*, 468 U.S. 1, 16 (1984). The Supreme Court has held that a novel rule meets this standard when "a decision of this Court . . . explicitly overrule[s] one of our precedents." *Id.* at 17.

Here, Johnson expressly overruled Supreme Court precedent. See *Johnson*, 135 S. Ct. at 2563 ("We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process. Our contrary holdings in *James v. United States*, 550 U.S. 192 (2007) and *Sykes v. United States*, 564 U.S. 1 (2011) are overruled."). Therefore, Taylor has demonstrated cause. See e.g, *Alvarado v. United States*, Case No. CV 16-4411-GW, 2016 WL 6302517, at *3 (C.D. Cal. Oct. 14, 2016) (Petitioner established cause based on *Johnson* ruling); *United States v. Casas*, Civil Case No. 16cv1339-BTM, 2017 WL 1008109, at *2 (S.D. Cal. Mar. 14, 2017) (cause established based on *Johnson*).

As to prejudice, Taylor contends that if he prevails his sentence would have been the height of prejudice because it was based on an unconstitutional provision.

"If a petitioner succeeds in showing cause, the prejudice prong of the test requires demonstrating 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). In this case, if Taylor were to prevail on his

motion, his sentence be unlawful and vacated – demonstrating actual prejudice.

Here, Taylor argues that his Violent Crime in Aid of Racketeering Activity conviction is no longer a "crime of violence" after *Johnson*. First, he argues that *Johnson* applies to the residual clause at issue in light of the Ninth Circuit's ruling in *Dimaya v. Lynch*, 803 F.3d 1110, 1111 (9ᵗʰ Cir. 2015). Second, he contends that such conviction is not a "crimes of violence" under the alternative force clause.

Taylor was convicted of one count for Possession of a Firearm During and in Relation to a Crime of Violence in violation of § 924(c) [Count 6s]. The underlying crime of violence was Violent Crime in Aid of Racketeering Activity [Count 5s].

**Whether Violent Crime in Aid of Racketeering Activity is a Crime of Violence under the Residual Clause of § 924(c) after *Johnson*.**

Taylor argues that before *Johnson*, courts had relied on the residual clause to find RICO conspiracy a crime of violence. Since *Johnson* held that the residual clause in the ACCA is void for vagueness, Taylor argues that *Johnson* applies to the residual clause of § 924(c) because the Ninth Circuit in *Dimaya* held that the identically worded definition of "crime of violence" referenced in the Immigration and Nationality Act ("INA"), 18 U.S.C. § 16(b), is unconstitutionally vague. *Dimaya*, 803 F.3d at 111. Since 18 U.S.C. § 16(b) is identical to the language of 18 U.S.C. § 924(c), Taylor contends the Court should conclude that § 924(c)(3)(B) is unconstitutionally vague and his sentence should be reduced.

In *Dimaya*, the Ninth Circuit examined a provision for the removal of non-citizens who have been convicted of an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony," includes, inter alia, "a crime of violence

(as defined in section 16 of Title 18 . . .).” 8 U.S.C. § 1101(a)(43)(F).

The term “crime of violence” means—

(a)   an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b)   any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property

of another may be used in the course of committing the offense. 18 U.S.C. § 16. In *Dimaya*, the Ninth Circuit, relying on the analysis in *Johnson*, held that 18 U.S.C. § 16(b), as incorporated in 8 U.S.C. § 1101(a)(43)(F) is unconstitutionally vague. *Id.* Notably, the Ninth Circuit limited its decision to the statute at issue, 8 U.S.C. § 1101(a)(43)(F), which defines an aggravated felony for purposes of subjecting a non-citizen to removal under 8 U.S.C. § 1227(a)(2)(A)(iii). *Id.* at 1120 n.17 (“Our decision does not reach the constitutionality of applications of 18 U.S.C. § 16(b) outside of 8 U.S.C. § 1101(a)(43)(F) or cast any doubt on the constitutionality of 18 U.S.C. § 16(a)’s definition of a crime of violence.”).

*Johnson v. United States*, 135 S.Ct. 2551 (2015) and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) are both new interpretations of statutory law, which were issued after Taylor had a meaningful time to incorporate the new interpretation into his direct appeal or subsequent motions. On June 26, 2015, the United States Supreme Court decided *Johnson*. It held the Armed Career Criminal Act’s (ACCA) definition of “violent felony” to include any felony that “involves conduct that presents a serious potential risk of physical injury to another” (also known as the residual clause) is unconstitutionally vague. *Id.* at 2557, 2563. On April 18, 2016, it made

*Johnson*'s holding retroactive to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

In this case, Taylor argues that a his conviction on Count 5s: Violent Crime in Aid of Racketeering Activity, in violation of 18 U.S.C. § 1959 is not "crime of violence."

Citing the Supreme Court's recent decision in *Johnson*, Taylor claims that § 924(c)(3)(B) is unconstitutionally vague. The Court refers to this clause as the "risk-of-force clause."

According to *Johnson*, "[t]wo features of the residual clause conspire to make it unconstitutionally vague."

The first feature is what is called the "ordinary case" analysis required under ACCA: in order to determine whether a given crime is a "violent felony," a court has to disregard the facts of the specific case before it, and consider only the "ordinary," or typical, case of the crime that the defendant was convicted of. For example, if a defendant was convicted of obstruction of justice, and his actual conduct involved stabbing a witness to death, the court cannot rule that the defendant committed a "violent felony" merely because this particular case involved a stabbing. Instead, the court is required to decide whether a "typical" obstruction of justice crime involves stabbing, or some other conduct with a "serious potential risk of physical injury." The reverse is also true: just because a defendant happened to commit a crime in a peaceful and non-violent manner in a case does not affect the court's decision on whether the crime is a "violent felony." In all cases, the court can only consider whether the "typical" or "ordinary" case of the crime meets the "serious potential risk of physical injury" standard.

ACCA's second problematic feature is the uncertainty about how much risk is enough for a crime to count as a "serious potential risk." Even if data about an

"ordinary case" is available, it is not at all clear if a crime that has, say, a 10% chance of causing permanent disfigurement in a victim is a "serious potential risk for physical injury." What about a crime with a 1% chance for death? And would this crime have a greater or lesser potential risk for physical injury than the crime with the 10% chance of permanent disfigurement? Although it is not uncommon for the law to sometimes rely on imprecise standards to judge real-world facts (consider, for example, imprecise standards like "reasonable person," or "material fact"), ACCA pairs an imprecise standard with a judicially imagined "ordinary case." That pairing, according to the Supreme Court, is what renders ACCA unconstitutionally vague.

### *Johnson's Impact on "Crime of Violence" Definition Under 924(c)*

ACCA defines "violent felony," and *Johnson* held that part of the definition is unconstitutional. In federal criminal law, there is a very important and similar-sounding term called "crime of violence," that frequently appears in rules and statutes, including 18 U.S.C. § 924(c).

18 U.S.C. § 924(c) creates a substantive offense for possessing or using a firearm during, or in furtherance of, a "crime of violence." The statute defines "crime of violence" as an offense that either: (1) has as an element the use, attempted use, or threatened use of physical force; or (2) is a felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The § 924(c) definition of "crime of violence" is copied verbatim from 18 U.S.C. § 16, which provides the general definition for "crime of violence" under federal law.

The parallels between "violent felony" and "crime of violence" are immediately apparent.

- First, because the residual clause defining "crime of violence" begins with the phrase: "by its nature," it tells us that deciding whether a given crime is a "crime of violence" under § 924(c) must use the "ordinary case" method, just like with ACCA.

- Second, because the residual clause defining "crime of violence" asks us to look at whether there is a "substantial risk that physical force…may be used," this is no more precise than the "serious potential risk of physical injury" standard under ACCA.

In other words, in order for a judge to decide whether a crime is a "crime of violence" under § 924(c), the judge needs to use an "ordinary case" analysis and apply an imprecise standard. That sounds just like the problems highlighted by *Johnson*, that rendered ACCA's definition of "violent felony" unconstitutionally vague.

- In *United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016). A panel of the Fifth Circuit rejected all of the Government's arguments and held that 18 U.S.C. § 16(b) is unconstitutionally vague. That opinion has been vacated pending an *en banc*.

- In *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2016). The Seventh Circuit has held that 18 U.S.C. §16(b) is unconstitutionally vague. In rejecting the government's arguments, the Seventh Circuit reasoned that the "confusing list" of enumerated offenses and the history of circuit splits under ACCA were not essential to the outcome in *Johnson*.

Recently, the U. S. Supreme Court decided *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). In *Dimaya*, the Supreme Court, applying its earlier decision in *Johnson*, held that the residual (or "risk of force") clause found in 18 U.S.C. § 16(b), as used in the Immigration and Nationality Act's ("INA") definition of "aggravated felony," 8 U.S.C. § 1101(a)(43)(F), is unconstitutionally vague in violation of the Due Process Clause. See also, *Dimaya*, 138 S. at 1213 ("*Johnson* is a straightforward decision, with equally straightforward application here.").

//

Section 16(b) and § 924(c)(3)(B) of Title 18 are "virtually identical." *United States v. Evans*, 478 F.3d 1332, 1343 (11ᵗʰ Cir. 2007); *United States v. O'Connor*, (No. 16-3300) (10ᵗʰ Cir. Oct. 30, 2017); see also *United States v. Acosta*, 470 F.3d 132, 135-36 (2d Cir. 2006) ("§ 16 [is] a provision which contains virtually identical language to § 924(c)(3)."). Compare 18 U.S.C. § 16(b)(defining "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.") with § 924(c)(3)(B) (defining "crime of violence" as "an offense that is a felony and that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.") .

Courts use the categorical approach to interpret both statutes. Compare, *e.g.*, *Dimaya*, 138 S. Ct. at 1211 (applying categorical approach to § 16(b)) with *United States v. Hill*, 832 F.3d 135, 139 (2d Cir. 2016) (applying categorical approach to § 924(c)(3)(B)); *United States v. Ivezaj*, 568 F.3d 88, 95-96 (2d Cir. 2009)(same); *Acosta*, 470 F.3d at 135-36 (same).

This case presents the question whether the "crime of violence" definition in 18 U.S.C. § 924(c)(3)(B), is unconstitutionally vague on its face in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), wherein the Supreme Court struck down the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii) as unconstitutionally vague; and *Dimaya*, wherein the Supreme Court struck down the residual clause in 18 U.S.C. § 16(b) as unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. Section 16(b) defines "crime of violence" as any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." This now-invalidated definition is identical to the

commonly-used residual clause in § 924(c)'s prohibition on possessing a firearm in the course of a crime of violence.

Taylor contends that the holding in *Dimaya* extends beyond the INA because § 16(b) is materially identical to the residual clause definition of "crime of violence" under 18 U.S.C. § 924(c)(3)(B). The similarities between the ACCA residual clause and the "crime of violence" definition provided by 18 U.S.C. § 924(c) mean that § 924(c) must likewise be struck down as unconstitutionally vague.

In light of *Dimaya*, Taylor's conviction for possessing a firearm during a crime of violence, see 18 U.S.C. § 924(c)—i.e., 18 U.S.C. § 1959– Violent Crime in Aid of Racketeering Activity, must be vacated because § 924(c)(3)(B) is unconstitutionally vague. The Fifth Amendment's proscription against depriving an individual of life, liberty, or property without due process of law supplies the rationale for the void-for-vagueness doctrine. Under it, the government may not impose sanctions "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Welch v. United States*, 136 S. Ct. 1257, 1262 (2016)(quoting *Johnson*, 135 S. Ct. at 2556).

In *Welch*, the Supreme Court held that *Johnson* applied retroactively to cases on collateral review. In *Mays v. United States*, the Court of Appeals for the Eleventh Circuit held that *Johnson* and *Descamps* applied "retroactively in the first post-conviction context." 817 F.3d 728, 730 (11th Cir. 2016) (per curium).

The *Dimaya* Court described its holding as a "straightforward application" of the "straightforward decision" in *Johnson*. The Court identified two features which it said had controlled the *Johnson* decision striking down the ACCA's residual clause in § 924(e)(2)(B), and which it determined applied with equal force to the similar language in § 16(b). First, both statutes require that the assessment of the risk posed focus on the "ordinary case" of an offense, rather that the particular facts of a particular case. As it had in *Johnson*, the Court stressed the problematic nature of this inquiry, especially because judges are given no guidance as to how to determine what

constitutes the ordinary case. Second, both statutes contain an ill-defined risk threshold—"substantial risk" in § 16(b), and "serious potential risk" in § 924(e)(2)(B). While the Court, as it had in *Johnson*, stressed that qualitative standards may well pass constitutional muster in the general course, such a standard was fatally vague where combined with the already vague ordinary case inquiry.

The *Dimaya* majority, however, was silent as to the implications of its holding for § 924(c)'s residual clause, but the logic of its analysis requires that the clause be struck down.

In determining whether an offense is a "crime of violence" under § 924(c), we employ the categorical approach, asking whether the minimum criminal conduct necessary for conviction under the applicable statute—as opposed to the specific underlying conduct at issue—amounts to a crime of violence as defined in subsection (A) or (B). See, e.g., *Taylor v. United States*, 495 U.S. 575, 600 (1990); see also, *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (outlining categorical approach as applied to prior conviction under ACCA).

Classifying crimes, especially by assessment of risk of force and violence, is built into the criminal justice system. For example, 18 U.S.C. § 924(c), which provides for enhanced penalties for the use of a firearm in connection with a crime, contains the same definition of "crime of violence" as 18 U.S.C. § 16(b). See 18 U.S.C. § 924(c)(3)(B).

Section 924(c) creates a substantive offense for possessing or using a firearm during, or in furtherance of, a "crime of violence." The statute defines "crime of violence" as an offense that either: (1) has as an element the use, attempted use, or threatened use of physical force; or (2) is a felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The § 924(c) definition of "crime of violence" is copied verbatim from 18 U.S.C. § 16(b), which provides the general definition for "crime of violence" under federal law.

1    In this case, Taylor's sentence for use of a weapon during a crime of violence,

2  in violation of 18 U.S.C. § 924(c), is now unconstitutionally imposed where the

3  factual basis of the conviction is now insufficient because the charged predicate

4  offense of Violent Crime in Aid of Racketeering Activity is not categorically a crime

5  of violence under either the use-of-force clause or the residual clause of 18 U.S.C. §

6  924(c)(3).

7    At issue in this Second-in-Time § 2255 is whether Violent Crime in Aid of

8  Racketeering Activity qualifies as a crime of violence under § 924(c), including

9  whether the residual clause of § 924(c)(3)(B) is unconstitutionally vague under

10  *Johnson* and *Dimaya*, whether the factual basis of the conviction is sufficient for

11  Taylor's § 924(c) conviction.

12    In light of *Sessions,* Violent Crime in Aid of Racketeering Activity no longer

13  qualifies as a crime of violence under either the use-of-force clause or the residual

14  clause of § 924(c)(3). Violent Crime in Aid of Racketeering Activity categorically

15  fails to qualify as a crime of violence under the use-of-force clause because it can be

16  committed without physical force or the threatened deployment of the same and

17  because it can be accomplished by mere "intimidation," which does not require the

18  intentional use or threat of use of violent physical force for two reasons. First, this

19  Court's precedent establishes that intimidation is the threatened infliction of bodily

20  injury, which is not equivalent to the threatened use of force. Second, precedent

21  requires that a use or threat of use of force be intentional, but intimidation may occur

22  even if the defendant did not intend to make a threat. And Violent Crime in Aid of

23  Racketeering Activity cannot qualify as a "crime of violence" under § 924(c)(3)'s

24  residual clause, because, under the reasoning of *Johnson* and *Dimaya* that clause is

25  void for vagueness under the Due Process Clause of the Fifth Amendment.

26    See also *United States v. Casas*, 2017 WL 1008109 (S.D. Cal. March 14, 2017)

27  (denying government's motion to stay § 2255 action asserting that *Johnson* voids

28  residual clause of § 924(c), pending resolution of *United States v. Begay*, No.

14-10080) (noting that "the Government has not demonstrated prejudice – a typical prerequisite for a stay.").

See also the Ninth Circuit's pending case *United States v. Begay*, No. 14-10080. Randly Irvin Begay appeals his conviction and sentence for second-degree murder and discharging a firearm during a crime of violence. *Begay* addresses whether 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague under *Johnson*; *United States v. Gaytan*, 9th Cir. Case No. 14-10167 (considering the same issue); and *United States v. Andrade*, 9th Cir. Case No. 14-10226 (same).

Because Violent Crime in Aid of Racketeering Activity is not a qualifying "crime of violence" predicate, the factual basis of the conviction admits to conduct that legally does not satisfy every element of the charged statute. A guilty conviction to a non-existent offense obviously affected both Taylor's substantial rights, as well as the fairness, integrity, or public reputation of the proceedings.

Finally, while *Dimaya* construed § 16(b) in the immigration context, the Court specifically explained that its holding applied to the criminal context as well: "[A]lthough this particular case involves removal, § 16(b) is a criminal statute, with criminal sentencing consequences. [] And this Court has held (it could hardly have done otherwise) that 'we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context.'" *Dimaya*, 138 S. Ct. at 1217 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004)). Therefore, *Dimaya* voids § 924(c)(3)(B) as well.

## B. Fair Sentencing Act of 2010 and First Step Act of 2018

### Fair Sentencing Act of 2010

The Fair Sentencing Act reduces the mandatory minimum for the following categories of offenders subject to one or more § 851s, depending on the quantity of crack charged:

- Those charged and convicted of 5 grams to less than 28 grams, or of 50 grams to less than 280 grams, where the prosecutor filed a

17

- notice of one prior conviction for a "felony drug offense" under § 851.

- Those charged and convicted of 5 grams to less than 28 grams of crack, or of 50 grams to less than 280 grams, where the prosecutor filed a notice of two prior convictions for a "felony drug offense" under § 851.

To determine whether a defendant's statutory penalty range would be lower today, and what that range would be, use the chart below:

| Effect of Fair Sentencing Act on Statutory Ranges | | |
|---|---|---|
| Statutory Range | Pre-FSA | Post-FSA |
| 21 USC 841(b)(1)(A) | | |
| 10-life | 50 grams or more | 280 grams or more |
| 20-life | 50 grams or more + one 851 | 280 grams or more + one 851 |
| | 50 grams or more + the drug was the but for cause of death or serious bodily injury | 280 grams or more + the drug was the but for cause of death or serious bodily injury |
| Life | 50 grams or more + two 851s | 280 grams or more + two 851s |

First Step Act of 2018

The First Step Act of 2018 was enacted on December 21, 2018. Pub. L. No. 115-391, 132 Stat. 5194. Section 404 of the Act provides that the court may, on its own motion, "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220, 124 Stat. 2372) were in effect at the time the covered offense was committed." *Id.* § 404(b); see also 18 U.S.C. § 3582(c)(1)(B). The Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the 2 Fair Sentencing Act of 2010." *Id.* § 404(a). Section 2 of the Fair Sentencing Act modified the statutory penalties for certain violations of the Controlled Substances Act, 21 U.S.C. 841(b), effectively reducing the penalty applicable to Taylor's offense of conviction.

See Pub. L. No. 111-220, 124 Stat. 2372 (2010).

At the time of his sentencing in 2013, Defendant faced a statutory sentencing range of 20 years to life on Counts 17s and 18s, and a mandatory life sentence on Count 9s, plus a 10-year term of supervised release. If sentenced today, Taylor would likely receive a term of 120 months in prison (minimum mandatory under the 2010 FSA) on Counts 17s and 18s, and a sentencing range of 20 years to life on Count 9s, instead of the mandatory life.

### Count 5s– Violent Crime in Aid of Racketeering Activity

Here, Count 5s conviction resulted in murder of Billy Thomas. Violation of 18 U.S.C. § 1959 calls for up to Life imprisonment.

**Note:** On November 1, 2004, after other individuals shot Thomas, who fell to the ground, "stood over his body and continued to shoot him." Taylor contends that neither the physical evidence nor the oral testimony produced at trial supports this allegation.

The physical evidence in this case demonstrated that two individuals with .9 MM weapons shot the victim at close range, while a third person with a .45 caliber weapon fired at the victim from a distance of 27 to 36 feet. The .45 caliber ballistics evidence was deemed to be a match with a .45 caliber weapon found during the search of Fabreonne Tillman's home on November 17, 2004. This weapon "allegedly" belonged to Taylor. As such, this evidence was credited, and concluded that Taylor was the one shooting at the victim from a distance of approximately 30 feet. However, there was no credible evidence to support the allegations, yet Taylor was convicted guilty.

The preponderance of the evidence remains insufficient, nonetheless Taylor's sentence was a result of erroneous admission of evidence, aggravating 924(c) stacking and 851 enhancements. These error infringes upon Taylor's liberty, interest, and due process due to the mischaracterized interpretation and application of said enhancements.

//

Finally, Section 404 of the First Step Act makes the changes brought about by the Fair Sentencing Act of 2010 fully retroactive. As the U.S. Sentencing Commission's "2015 Report to Congress: Impact of the Fair Sentencing Act of 2010," explained: "The Fair Sentencing Act of 2010 (FSA), enacted August 3, 2010, reduced the statutory penalties for crack cocaine offenses to produce an 18-to-1 crack-to-powder drug quantity ratio. The FSA eliminated the mandatory minimum sentence for simple possession of crack cocaine and increased statutory fines."

Hence, Taylor's Count 5s conviction should be dismissed for lack of evidence; Count 6s should be dismissed as null and void because Racketeering Activity is not a "crime of violence"; and Count 9s' sentencing range is now 20 years to life.

## VI. **CONCLUSION**

For the above and foregoing reasons, Taylor's sentence should be vacated for resentencing pursuant to the Fair Sentencing Act of 2010 and First Step Act of 2018, and without the 924(c) consecutive sentence. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing so that Taylor may further prove his meritorious ground for relief, resolve facts in dispute and expand an incomplete record.

Respectfully submitted,

Dated: February 25, 2019.

JACOREY DESHAWN TAYLOR
REG. NO. 05263-748
USP VICTORVILLE
U.S. PENITENTIARY
P.O. BOX 3900
ADELANTO, CA 92301
Appearing *Pro Se*

20

Jacoery Taylor #05263-198
United States Penitentiary
P.O. Box 3900
Adelanto, CA 92301